UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO.: 2:09-CR-09-FtM-29-DNF
2:09-CR-52-FtM-29-DNF

VOLUME ONE OF THREE

THE UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                        Fort Myers, Florida
                                            January 5, 2010

GILBERTO RIOS                          1:35 p.m.

        Defendant.

TRANSCRIPT OF EXCERPT OF JURY TRIAL, DAY ONE

HELD BEFORE THE HONORABLE JOHN E. STEELE
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S

FOR PLAINTIFF:    Office of the United States Attorney
                   2110 First Street
                   Suite 3-137
                   Fort Myers, FL  33901
                   (239) 461-2200
                   BY:  DOUGLAS MOLLOY, ESQ.
                        Assistant United States Attorney

FOR DEFENDANT:    Federal Public Defender's Office
                   1514 Broadway
                   Kress Building, Suite 301
                   Fort Myers, FL  33901
                   (239) 334-0397
                   BY:  RUSSELL K. ROSENTHAL, ESQ.

REPORTED BY:      JEFFREY G. THOMAS, RPR-CRR
                   Official Federal Court Reporter
                   United States Courthouse
                   2110 First Street, Suite 2-194
                   Fort Myers, FL  33901
                   (239) 461-2033

```
 1      THEREUPON, the above-entitled case having been called
 2  to order, the following proceedings were held herein,
 3  to-wit:
 4                          - - -
 5      THE COURT:  This is the case of United States
 6  versus Gilberto Rios.  It is Case 2:09 Criminal 52.
 7  Representing the United States is Assistant United States
 8  Attorney Douglas Molloy.  Representing the Mr. Rios, who is
 9  present in court, is Assistant Federal Public Defender
10  Russell Rosenthal.  We are scheduled for a jury trial.  Are
11  both sides ready?
12      MR. MOLLOY:  Yes, Your Honor.
13      MR. ROSENTHAL:  Yes, Your Honor.
14      THE COURT:  A couple housekeeping matters, first
15  of all.  I would propose to tell the jury that we anticipate
16  the case will be complete by the end of the week.  Is that
17  still a fair representation?
18      MR. MOLLOY:  Yes, Your Honor.
19      MR. ROSENTHAL:  Yes, Your Honor.
20      THE COURT:  Is it shorter than that, or should I
21  err on the side of --
22      MR. MOLLOY:  We anticipate it being shorter than
23  that.  The government anticipates resting on Wednesday,
24  probably in the afternoon.  And then Mr. Rosenthal has filed
25  a witness list, and I would think that we would be done by
```

```
 1  Thursday, but that's . . . .
 2          THE COURT:  Thursday afternoon I've got a schedule
 3  conflict, so we're going to break about 12:30 on Thursday,
 4  if that impacts things.
 5          MR. ROSENTHAL:  I think it's possible that we may
 6  be able to finish before the middle of the day on Thursday,
 7  or at least have the case to the jury by that time.  I guess
 8  it's also possible we could spill into Friday.
 9          THE COURT:  I'll just tell them the end of the
10  week then.
11          In terms of jurors taking notes, what's your
12  respective preferences?
13          MR. MOLLOY:  Your Honor, this is not a long case
14  or a complicated case.  We'd ask that the jurors not be
15  instructed to take notes.
16          THE COURT:  Be instructed not to take notes?
17          MR. MOLLOY:  Yes.
18          MR. ROSENTHAL:  I have no objection to them taking
19  notes.
20          MR. MOLLOY:  Again, for record purposes, it tends
21  to make the one juror that's taking notes in a relatively
22  short case the super juror, and the Court is instructing
23  everybody to pay attention.  This case does not involve a
24  lot of exhibits or . . . and it is a relatively short case.
25          THE COURT:  All right.  Let me think about that.
```

```
 1    What, if anything, have the parties worked out with regard
 2    to the firearm?
 3              MR. MOLLOY:  Your Honor, Mr. Rosenthal and myself
 4    have stipulated that the firearm described in the indictment
 5    in the case is, in fact, a firearm as defined by the laws of
 6    the United States Code, and was manufactured outside the
 7    State of Florida.  Therefore, the firearm would have
 8    traveled in or otherwise affected interstate or foreign
 9    commerce.  This eliminates the witness that would testify as
10    to those very things.
11              We've also stipulated that the defendant -- and
12    this is kind of standard in regard to the second count --
13    that the defendant, Gilberto Rios, has, previously to this
14    case, been previously convicted of a felony offense; that
15    is, a crime -- conviction of a crime punishable by more than
16    a year imprisonment, and he did not have his rights to
17    possess a firearm restored.  That eliminates another witness
18    that would testify to those things.
19              THE COURT:  Do I gather that that eliminates the
20    need for the Court to tell the jury the nature of the
21    felony; that is, possession with intent to distribute?
22              MR. MOLLOY:  That's correct.
23              MR. ROSENTHAL:  That's correct.
24              THE COURT:  But I'll tell them he was convicted of
25    a felony, just not what it was?
```

1     MR. ROSENTHAL:  That would be our request.
2     THE COURT:  All right.  And who are the witnesses
3  we can eliminate?  Strike their name from what I tell the
4  jury.
5     MR. MOLLOY:  There is a . . . if I might just have
6  a moment, Your Honor?
7     THE COURT:  Sure.
8     MR. MOLLOY:  One is Janet Keels, who is with ATF.
9  And Agent Bert, who is with ATF.  And a fingerprint witness,
10 who I think his first name is . . . . Sharon Graves.  Who
11 compared the fingerprints to the prior conviction.
12    THE COURT:  All right.  Anything else before we
13 have the jury come in?  I know there's a motion in limine
14 somewhere.
15    MR. MOLLOY:  There's two points that can wait
16 until after the jury is instructed, and the points that
17 are . . . I think . . . that are raised by the defense, that
18 the government would need instruction on are, one, the
19 defendant, when arrested, he was arrested on, at that time,
20 he was arrested on active warrants that he had.  We would
21 not specify the active warrants, but it becomes somewhat
22 hard to explain -- there were two other witnesses that were
23 in the room, and they were simply let go.  That's because
24 they had no active warrants.  The defendant was detained
25 because of active warrants.

1          The second area -- and that's the first one. Let
2  me let Mr. Rosenthal address that.
3          THE COURT: Well, what is it you propose to
4  elicit, first of all?
5          MR. MOLLOY: That the defendant was detained.
6          THE COURT: Okay.
7          Any objection to that?
8          MR. ROSENTHAL: To the fact that he was detained,
9  no, if that's as far as it will go. I do have an objection
10 if the government is going to elicit there was an
11 outstanding warrant.
12         THE COURT: All right. I assume, to the extent
13 that the testimony is to the effect that he was detained, or
14 he was . . . lawfully detained, or something like that, it
15 doesn't elicit the existence of the warrant, and, therefore,
16 that shouldn't be any problem, I wouldn't think.
17         MR. MOLLOY: If that's as far as we go, Your
18 Honor, you know, the . . . I guess the anticipated
19 difficulty would be if the defense makes a point that the
20 other two witnesses -- the other two people present in the
21 room were not held. But we can cross that bridge when we
22 come to it. I'm simply going to ask -- that would be
23 Detective Aument's testimony, and I'll simply ask him was
24 the defendant detained, and I expect the answer to be yes.
25         THE COURT: Depending what the cross is, that may

```
 1   open doors, and if it does, we can deal with it at that
 2   time.
 3              MR. MOLLOY:  The only other thing of note, Your
 4   Honor, that Mr. Rosenthal has raised, is that the government
 5   does intend on eliciting in this case that the defendant --
 6   what the government anticipates the testimony to be is that
 7   the defendant allowed his room, the hotel room he was
 8   staying in, to be searched; and then, when Lieutenant Aument
 9   came upon a safe, Aument asked if he could open the safe,
10   and the defendant said, "Now you get a search warrant," or
11   words to that effect.  We believe that should be an indicia
12   of ownership that we should be able to elicit.
13              THE COURT:  What's going on with the other two
14   individuals in the room?  I mean, is . . . are they . . .
15   arguably owners, or is it --
16              MR. MOLLOY:  No.
17              THE COURT:  -- something that, in
18   cross-examination, you anticipate . . . .
19              MR. MOLLOY:  Well, we anticipate -- this is
20   basically a constructive possession case.  There are three
21   people in the hotel room.  The first indicia of ownership
22   that we expect the testimony to show is that he said,
23   meaning the defendant said, "Everything in the room is
24   mine."  A general statement.  Secondly, when asked about the
25   safe, that, "I don't have a key to the safe.  I lost it."
```

```
 1  Third, that there are papers in the safe.  Aument has --
 2  Lieutenant Aument has the safe -- it's a small safe -- in
 3  his hand; and, in picking it up, what appears to him to be a
 4  heavy metal object slides back and forth, inconsistent with
 5  papers.  And then Lieutenant Aument asks for permission to
 6  search the safe, which is denied by the defendant, saying
 7  you need a search warrant for that.
 8            THE COURT:  Mr. Rosenthal?
 9            MR. ROSENTHAL:  Judge, I think the law is clear
10  that the fact of a refusal to consent is not admissible to
11  show that the defendant expected that there would, in fact,
12  be contraband found within the safe.  The fact that he says
13  you can't search the safe, in light of the statements that
14  precede that, can only be -- would only be used to infer
15  that he intended -- that he believed that there was
16  incriminating evidence within the safe, and that's why he
17  declined -- why he declined to consent.
18            The government does have the preceding statements,
19  and we can argue to the jury what they mean; but where he
20  makes a statement with respect to papers within the safe,
21  that he makes a statement with respect to the key, I think
22  those -- you know, whatever issues we may have with those, I
23  think the government can permissibly argue that those show
24  an indicia of ownership.  Whereas with the third thing, like
25  are there -- now you're going to need to get a search
```

warrant, the only purpose of that, in light of the preceding statements, is to establish that he believed that there would be incriminating evidence inside; and, of course, that's analogous to the comment -- to a comment on defendant's exercise of a 5th Amendment right.

THE COURT: First of all, you've not cited any 11th Circuit cases supporting that position; and, in the short period of time between which you filed the motion and now, I haven't found any either. There are a number of other circuits who have held that, but they've also held, on at least one case that we found, that if the evidence of the refusal for consent is directed to show dominion and control, it's admissible for that purpose. And, from what you've both said, why isn't that purpose, quite literally, what we have here, the defendant says everything's mine, and then, at some point, says that's mine, too, but you can't search it now without a warrant?

MR. ROSENTHAL: I don't think that he said, "That's mine, too, but you can't search it without a warrant." I just think he said that, at least according to what the evidence was at the suppression hearing, that, "You're going to need to get a search warrant."

THE COURT: And, if it wasn't his, he wouldn't have any ability to tell them to get a search warrant.

MR. ROSENTHAL: Well, assuming that he correctly

```
 1   knows the law.  But the -- I think that, in terms of . . .
 2   then we would have to get into a 401 versus 403 analysis,
 3   and if there is other evidence that the government is going
 4   to rely on to show indicia of ownership, and this -- the
 5   refusal to consent is absolutely . . . absolutely
 6   prejudicial in terms of his -- his belief that there may be
 7   contraband inside; but under that analysis, that it should
 8   be excluded.  If that was the government's sole evidence,
 9   then it might be a different story; but from what Mr. Molloy
10   is proffering, the government has other evidence on that
11   point.
12           THE COURT:  It's clear to me that, when you're
13   weighing prejudice against probative value, there is some
14   prejudice, because virtually any evidence the government
15   wants against the defendant is going to have some
16   prejudicial impact or they wouldn't want it.  But it's clear
17   to me that the prejudice would not outweigh the probative
18   value here.
19           But it does seem -- Mr. Molloy, tell me how . . .
20   what's the logistical issue?  It seems to me like I should
21   hear what the testimony is before deciding, because,
22   depending on what the nuances are, as we know, what lawyers
23   think the testimony is might not come in quite that way.
24           MR. MOLLOY:  And that's fine with me, Your Honor.
25   I'd ask you to reserve ruling on that particular part of the
```

1  motion, and both of us, obviously, won't mention it on
2  opening; but when we get to that particular place, I do
3  think there's some distinguishing characteristics about
4  this, in that he said you can search -- or we believe the
5  evidence will be you can search my room, everything in it is
6  mine, and then -- you know, this is the real crux of the
7  case, is his exercise of ownership over the . . . the safe.
8          THE COURT: Well, is it logistically feasible to
9  tell you don't go to that last point without prior approval
10 of the Court? That is, once you get to the point where
11 you're going to have the witness talk about his refusal,
12 approach sidebar, and let me hear arguments as to where
13 we're at?
14         MR. MOLLOY: Yes, Your Honor. I think that's
15 entirely logistically feasible, and, in opening, I'll just
16 simply say he obtained a search warrant.
17         THE COURT: All right. That works. I would
18 instruct the government, then, not to elicit that in front
19 of the jury without giving the Court the opportunity to
20 revisit that after hearing the testimony.
21         MR. MOLLOY: One more thing, Your Honor. The
22 clerk can call the jury. This is very short.
23         I spoke to Mr. Rosenthal about it before. I am --
24 this is human trafficking month, by decree of the president,
25 and I am a radio -- it's a radio show produced by PBS, but I

1  can be in the courthouse when I do it.  It goes from 12:00
2  to 1:00 tomorrow afternoon.
3         I also have -- that seems to run -- that wouldn't
4  be a problem, since the Court is taking Thursday afternoon
5  off.  There's also a television show that I'm . . .
6  something on, Thursday afternoon, late.  But if the Court is
7  not having court Thursday afternoon, then that won't be a
8  problem.
9         THE COURT:  All right.  So Wednesday, 12:00
10 to 1:00, you've got a commitment, so we need to take a
11 longer lunch hour?
12        MR. MOLLOY:  Just a longer lunch hour.  And I
13 should be able to eat at my desk, because it's radio.  And
14 I'll chew quietly.
15        THE COURT:  Do we need to tell the jury not to be
16 watching TV so they don't see your face?
17        MR. MOLLOY:  You might instruct them -- it is a
18 live show.
19        THE COURT:  I don't know when it is going to be
20 broadcast.
21        MR. MOLLOY:  It is a live show on Thursday
22 evening, from 7:00 to 8:00, and you might instruct them,
23 without, you know, saying that I'm on there, that it might
24 be good to stay away from TV for that period of time.
25        THE COURT:  Of course, if I tell them don't watch

1  PBS from 7:00 to 8:00, that's going to be the only channel
2  that they're going to want to watch, even if they've never
3  watched it before in their life.
4        MR. MOLLOY:  If the Court structures it so they
5  just don't watch TV from 7:00 to 8:00 -- maybe they'll just
6  start flipping through.
7        THE COURT:  Every parent in the country wishes I
8  had that power to tell people not to watch TV for certain
9  hours.
10        What do you think, Mr. Rosenthal?
11        MR. ROSENTHAL:  I'm not sure how to handle
12  the 7:00 -- what to tell them not to watch.  I don't want to
13  make more of this with the jury than there really is, and
14  I'm of a concern that if the Court says don't watch PBS
15  between 7:00 and 8:00, that the jury may think there's
16  something that pertains to this case, which would seem to
17  make this case to be a bigger production than it is.
18        THE COURT:  I could just tell them Mr. Molloy is
19  going to be on the TV, talking about things not related to
20  this case.  Don't watch him.  You'll get your fill of him in
21  this Court.
22        MR. ROSENTHAL:  If the Court were to word it that
23  way, I would have no problem.
24        THE COURT:  I wouldn't quite word it that way.  I
25  do think we don't want to overemphasize something that

14

```
 1   really doesn't impact the case; but if you remind me on
 2   Thursday, I think I'd give them some type of instruction.
 3            All right.  Anything else?
 4            MR. MOLLOY:  No, Your Honor.
 5            THE COURT:  Mr. Rios, every time we have a sidebar
 6   conference, either during jury selection or during the trial
 7   itself, I'll typically ask counsel to come to sidebar.  I
 8   mean you, as well.  You don't have to come if you don't wish
 9   to, but if you wish to come with your lawyer, you may do so.
10   If I see you sitting at counsel table, I will assume you
11   decided not to come.  And that's fine.  But I'm not going to
12   specifically include you each time.  I'll just say,
13   "Counsel, approach sidebar," and you can come or not, at
14   your pleasure.
15            THE DEFENDANT:  Yes, sir.
16            MR. ROSENTHAL:  Judge, one other matter.  And I
17   don't know -- I see Agent Duquette, and also Lieutenant
18   Aument, at the government's table.  Agent Duquette, I don't
19   believe, is a witness.  He's a witness on some peripheral
20   matters.  Lieutenant Aument is obviously the crucial witness
21   in the case.  I don't know if the government intended to
22   have both of them sitting at counsel table, but I would ask
23   that the government be limited to one case agent.
24            THE COURT:  All right.
25            Mr. Molloy?
```

1    MR. MOLLOY: Well, obviously -- I'm sorry, not
2  obviously, but in cases of this nature, where it is a Drug
3  Enforcement Agency adoption of a case, and we work with, in
4  this case, the DeSoto County Sheriff's Department, both of
5  these men are responsible for bringing this case to the U.S.
6  Attorney's Office. Mr. Duquette basically will be handling
7  the witnesses that arrive, and Lieutenant Aument will be
8  advising me throughout the case.
9    THE COURT: Do you anticipate he's going to be
10  your first witness, or near your first?
11    MR. MOLLOY: He will be my third, but my first two
12  witnesses are very short.
13    THE COURT: All right.
14    Anything else?
15    MR. ROSENTHAL: No.
16    THE COURT: All right. The Court will allow both
17  officers to serve as case agents.
18    Mr. Rosenthal, do you want me to cover in my voir
19  dire the fact that your client has a felony conviction?
20    MR. ROSENTHAL: I would request that you do. I'm
21  going to probably cover it in my follow-up questions, as
22  well, but I'd request that it initially come from the Court.
23    THE COURT: All right. And is it agreeable that I
24  tell them that I anticipate the parties will stipulate to
25  that fact?

1  MR. ROSENTHAL: Yes, Your Honor.
2  THE COURT: All right.
3  (Thereupon, beginning at 1:55 p.m., court stood at
4  ease while awaiting the arrival of the jury venire.)
5  MR. ROSENTHAL: Your Honor, I did add Mr. Lazara
6  onto our witness list, and I don't anticipate he's going to
7  testify; however, as long as we're asking the jury about
8  people they know, since, obviously, there's a possibility he
9  could end up being a witness, I would ask to include him, as
10 well.
11 THE COURT: You're going to need to remind me of
12 his first name.
13 MR. ROSENTHAL: Dino. That's the name that
14 anybody that knows him will know him by.
15 THE COURT: You'll forgive me if I don't ask you
16 how to spell his last name. I'm just going to say it
17 phonetically.
18 MR. ROSENTHAL: That's generally what we do.
19 (At 2:07 p.m., the jury venire was escorted into
20 the courtroom and jury selection commenced.)
21 (Following the jury selection process, the jury
22 having been seated, court was recessed for the day at
23 4:56 o'clock, p.m.)